**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

Scott Jeffrey Estep and Debra Lynn Estep,

                Plaintiffs,

v.

Equifax Information Services, LLC;
Experian Information Solutions, Inc.;
Ocwen Loan Servicing, LLC; Nationwide
Credit, Inc.; and Bank of America
Corporation,

                Defendants.

Case No.:

**COMPLAINT WITH JURY**
**TRIAL DEMAND**

## PRELIMINARY STATEMENT

This action for damages is based on Defendants' false reporting on Plaintiffs' credit files and/or consumer reports, and failures to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiffs, failures to conduct reasonable investigations with respect to such information, and illegal debt collection efforts.

## PARTIES

1.    Plaintiff, Scott Jeffrey Estep, is a natural person who resides in Cobb County, Georgia.

2.      Plaintiff, Debra Lynn Estep, is a natural person who resides in Cobb County, Georgia.

3.      Plaintiffs are individuals and are therefore "consumers" as that term is defined by 15 U.S.C. § 1681a(c).

4.      Plaintiffs are allegedly obligated to pay a debt and are therefore "consumers" as that term is defined by 15 U.S.C. § 1692a(3).

5.      Defendant Equifax Information Services, LLC (hereinafter "Equifax") is a limited liability company formed under the laws of the State of Georgia. Equifax may be served with process via its registered agent Shawn Baldwin, at 1550 Peachtree Street NW, Atlanta, Georgia 30309.

6.      Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports, and accordingly, is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

7.      Defendant Experian Information Solutions, Inc. (hereinafter "Experian") is a corporation formed under the laws of the State of Ohio, headquartered in the State of California, and registered to do business in the State of Georgia.

2

Experian may be served with process via its registered agent CT Corporation System, at 1201 Peachtree Street NE, Suite 1240, Atlanta, Georgia 30361.

8.     Experian regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports, and accordingly, is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

9.     Defendant, Ocwen Loan Servicing, LLC (hereinafter "Ocwen") is a limited liability company formed under the laws of the State of Delaware, headquartered in the State of Florida, and registered to do business in the State of Georgia. Ocwen may be served with process via its registered agent Corporation Service Company, and 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

10.    Ocwen is primarily engaged in the business of collecting consumer debts for defaulted residential home loans/mortgages, and mails over one-thousand debt collection letters and places over five-thousand debt collection telephone calls to consumers throughout the United States each month in attempts to collect on these debts.

11. Upon information and belief, Ocwen operates nationally and is licensed in multiple states as a collection agency and/or debt collector.

12. Ocwen regularly and in the ordinary course of business uses various instrumentalities of interstate commerce and the US Mail in business, the principal purpose of which is the collection of defaulted residential home loan/mortgage debts, and regularly collects or attempts to collect, directly or indirectly, defaulted residential home loan/mortgage debts owed or due, or asserted to be owed or due, to another, and is therefore a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

13. Ocwen regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions, such as Plaintiff's transactions at issue in this lawsuit and described herein, and is therefore a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

14. Defendant, Nationwide Credit, Inc. (hereinafter "Nationwide") is a corporation formed under the laws of the State of Georgia. Nationwide may be served with process via its registered agent Corporation Process Company, at 2180 Satellite Boulevard, Suite 400, Duluth, Georgia 30097.

15.    Nationwide regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions, such as Plaintiff's transactions at issue in this lawsuit and described herein, and is therefore a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

16.    Upon information and belief, Nationwide  operates nationally and is licensed, bonded or otherwise authorized to collect delinquent and defaulted accounts in all states.

17.    Nationwide uses interstate commerce and/or interstate mail in its business. The principal purpose of Nationwide's business is the collection of any debts. Nationwide also regularly collects, or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, to a third party. Nationwide is therefore a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

18.    Defendant, Bank of America Corporation (hereinafter "BOA") is a corporation formed under the laws of the State of Delaware and registered to do business in the State of Georgia. BOA may be served with process via its registered agent

CT Corporation System, at 1201 Peachtree Street NE, Suite 1240, Atlanta, Georgia 30361.

19.    BOA regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions, such as Plaintiff's transactions at issue in this lawsuit and described herein, and is therefore a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

## JURISDICTION AND VENUE

20.    This Court has federal question jurisdiction over Plaintiff's Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, claims pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331. This Court also has federal question jurisdiction over Plaintiff's Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). Additionally, jurisdiction and authority to enforce a bankruptcy court order arises under 28 U.S.C. § 1334.

21.    This Court has personal jurisdiction over Equifax because, *inter alia*, Equifax is a limited liability company formed under the laws of the State of Georgia, and

frequently and routinely conducts business in the State of Georgia, including the conduct complained of herein.

22.    This Court has personal jurisdiction over Experian because, *inter alia*, Experian frequently and routinely conducts business in the State of Georgia, including the conduct complained of herein.

23.    This Court has personal jurisdiction over TransUnion because, *inter alia*, TransUnion frequently and routinely conducts business in the State of Georgia, including the conduct complained of herein.

24.    This Court has personal jurisdiction over Ocwen because, *inter alia*, Ocwen frequently and routinely conducts business in the State of Georgia, including the conduct complained of herein.

25.    This Court has personal jurisdiction over Nationwide because, *inter alia*, Nationwide frequently and routinely conducts business in the State of Georgia, including the conduct complained of herein.

26.    This Court has personal jurisdiction over BOA because, *inter alia*, BOA frequently and routinely conducts business in the State of Georgia, including the conduct complained of herein.

27. Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Georgia because a substantial part of the events or omissions giving rise to the claims occurred in this district. Pursuant to LR 3.1B(3), NDGa, venue is proper in the Atlanta Division because the conduct complained of herein occurred in Cobb County, which is in the Atlanta Division.

## FACTUAL ALLEGATIONS

### Plaintiffs' Mortgages and Bankruptcy

28. On March 26, 2010, Plaintiffs obtained a residential home loan (the "First Mortgage") from Mortgage Electronic Registration Systems, Inc., as nominee for Walker Jackson Mortgage Corporation, for the original principal amount of $153,439.00.

29. The First Mortgage is secured by residential real property located at 4812 Helga Way NE, Woodstock, Georgia 30188-4066 (the "Property"), as evidenced by a Security Deed recorded in Deed Book 14761, Page 5419 of the Cobb County, Georgia real estate records.

30. Prior to July 22, 2011, the First Mortgage was assigned to BOA.

31.    On August 22, 2006, Plaintiffs obtained a residential home loan (the "Second Mortgage") from Harborside Financial Network, Inc. for the original principal amount of $36,900.00.

32.    The Second Mortgage is secured by the Property, as evidenced by a Security Deed recorded in Deed Book 14376, Page 4012 of the Cobb County, Georgia real estate records.

33.    As the Second Mortgage debt was for a residential home loan, it was primarily for personal, family and household purposes, and was therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5)

34.    Prior to July 22, 2011, the Second Mortgage was assigned to Litton Loan Servicing, L.P. (hereinafter "Litton").

35.    On July 22, 2011, the Plaintiffs filed a Voluntary Chapter 13 Bankruptcy Petition in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, Case Number 11-71106 (the "Bankruptcy").

36.    Plaintiffs' First Mortgage and Second Mortgage were listed as secured debts in Schedule D of their Bankruptcy Petition.

37.   On July 22, 2011, as part of their Bankruptcy, Plaintiffs filed a bankruptcy plan (the "Plan") which altered and redefined the contractual relationship between Plaintiffs and BOA regarding the First Mortgage.

38.   The Plan also altered and redefined the contractual relationship between Plaintiffs and Litton regarding the Second Mortgage.

39.   On August 24, 2011, Litton filed a Proof of Claim in Plaintiff's Bankruptcy Case for $36,346.14.

40.   On September 16, 2011, BOA filed a Proof of Claim in Plaintiff's Bankruptcy Case for $150,860.92.

41.   On April 19, 2012, the Bankruptcy Court issued an Order Granting Debtor's Motion to Value collateral and Modify Rights of Litton Loan Servicing, L.P. Pursuant to 11 U.S.C. §506 and §1322, stripping Litton of its security interest, and ordering that Litton's claim be treated as a general non-priority unsecured claim.

42.   On May 24, 2012, the Bankruptcy Court entered an Order Confirming Plan, and the Plan became *res judicata* as to the rights and duties of the Plaintiffs and BOA as they relate to the First Mortgage and terms of payment.

10

43.    The Plan also became *res judicata* as to the rights and duties of the Plaintiffs and Litton as they relate to the Second Mortgage and terms of payment.

44.    On June 1, 2012, the Bankruptcy Noticing Center served BOA and Litton with a copy of the Order Confirming Plan.

45.    On or about August 18, 2014, Ocwen obtained the servicing rights to the Second Mortgage.

46.    At the time Ocwen obtained the servicing rights to the Second Mortgage, the Second Mortgage was in default, thus making Ocwen a default servicer of the Second Mortgage.

47.    Ocwen was not the original lender on the Second Mortgage, does not own the Second Mortgage, and is not a creditor of Plaintiffs.

48.    Rather, Ocwen was and is attempting to collect the Second Mortgage debt, which was allegedly owed or due another, from Plaintiff.

49.    Plaintiffs abided by the terms of the confirmed Plan, and received a discharge of their debts by Order of the Bankruptcy Court dated August 31, 2015.

50.   The Second Mortgage being serviced by Ocwen was among the debts discharged, and Ocwen was served with a copy of the Discharge Order by the Bankruptcy Noticing Center on September 2, 2015.

51.   Pursuant to the Bankruptcy Plan, the First Mortgage was not discharged.

**<u>Ocwen's Mailings to Scott Estep</u>**

52.   On or about November 24, 2015, Ocwen sent Scott Estep a Mortgage Account Statement and request for payment via US Mail, in an attempt to collect the discharged Second Mortgage debt.

53.   In the November 24, 2015 Mortgage Account Statement, Ocwen stated that the Second Mortgage had a past due balance of $16,869.88 that was "Due Now." A true and correct copy of the relevant portion of the November 24, 2015 Mortgage Account Statement is as follows:





| Property Address | 4812 Helga Way Ne |
|---|---|
| | Woodstock, GA 30188 |

| Statement Date | 11/24/15 |
|---|---|
| Account Number | 7090435376 |
| Due Date | Due Now |
| **Amount Due** | **$16,869.88** |

| Customer Care | 855-771-1872 |
|---|---|

PERSONAL AND CONFIDENTIAL
PO BOX 26315
LEHIGH VALLEY PA 18002-6315

O C W E N

SCOTT ESTEP
4812 HELGA WAY NE
WOODSTOCK  GA  30188-4066

| Principal Balance* | $15,990.85 | Regular Payment Amount | N/A |
|---|---|---|---|
| Interest Rate | 0% | Past Due Payment Amounts | $16,869.88 |
| | | Total Amount Due | $16,869.88 |

* This is your Principal Balance only, not the amount required to pay the loan in full.

| Date Applied | Date Received | Description | Tran Total | Principal | Interest | Escrow | Opt Prods | Late Charges Fees/Other | Unapplied Funds |
|---|---|---|---|---|---|---|---|---|---|

54.   Because the Second Mortgage was discharged in Plaintiffs' Bankruptcy, the

information described above was both false and misleading.

55.   On or about December 22, 2015, Ocwen sent Scott Estep a Mortgage Account

Statement and request for payment   via US Mail, in an attempt to collect the

discharged Second Mortgage debt.

56.   In the December 22, 2015 Mortgage Account Statement, Ocwen stated that the

Second Mortgage had a past due balance of $16,869.88 that was "Due Now."

13

A true and correct copy of the relevant portion of the December 22, 2015

Mortgage Account Statement is as follows:



57.    Because the Second Mortgage was discharged in Plaintiffs' Bankruptcy, the

information described above was both false and misleading.

58.   On or about January 22, 2015, Ocwen sent Scott Estep a Mortgage Account Statement and request for payment   via US Mail, in an attempt to collect the discharged Second Mortgage debt.

59.   In the January 22, 2015 Mortgage Account Statement, Ocwen stated that the Second Mortgage had a past due balance of $16,869.88 that was "Due Now." A true and correct copy of the relevant portion of the January 22, 2015 Mortgage Account Statement is as follows:



60.    Ocwen was served notice from the Bankruptcy Noticing Center that the Second

Mortgage was discharged in Plaintiffs' Bankruptcy.

61.    Accordingly, Ocwen had actual notice that the Second Mortgage was

discharged in Plaintiffs' Bankruptcy.

62.   As Ocwen had actual notice that the Second Mortgage was discharged in Plaintiffs' Bankruptcy, Ocwen knew, or should have known, that the information in the Mortgage Account Statements it sent to Scott Estep was false, deceptive, and misleading.

63.   Ocwen's Mortgage Account Statements and requests for payment recklessly disregarded this fact and the legal limitations imposed on its conduct.

64.   Ocwen's Mortgage Account Statements and requests for payment were and are false and blatant misrepresentations to Scott Estep of the character, amount, and legal status of the discharged Second Mortgage debt.

65.   Ocwen made the foregoing misrepresentations regarding the character, amount, and legal status of the discharged Second Mortgage debt to Scott Estep in connection with Ocwen's attempts to collect the discharged Second Mortgage debt.

66.   Despite having actual knowledge that Scott Estep's personal liability for the Second Mortgage debt was discharged in Plaintiffs' Bankruptcy, Ocwen continued to represent to Scott Estep that he was personally liable for the Second

Mortgage, and continued to attempt to collect on the Second Mortgage from Scott Estep.

67.    Accordingly, Ocwen's conduct was willful.

**Ocwen's Referral of The Second Mortgage to Nationwide**

68.    Upon information and belief, in or around February 2016, Ocwen referred the Second Mortgage account to Nationwide for collections, in furtherance of Ocwen's attempts to collect the discharged Second Mortgage debt.

69.    In referring the Second Mortgage to Nationwide for collection, Ocwen represented to Nationwide that Scott Estep was still personally liable for the Second Mortgage debt.

70.    Because the Second Mortgage was discharged in Plaintiffs' Bankruptcy, the representation described above was both false and misleading.

71.    Ocwen was served notice from the Bankruptcy Noticing Center that the Second Mortgage was discharged in Plaintiffs' Bankruptcy.

72.    As such, Ocwen knew, or should have known, that its representation to Nationwide that Scott Estep was still personally liable for the Second Mortgage debt was false, deceptive, and misleading.

73.   In representing to Nationwide that Scott Estep owes money that he does not owe, Ocwen's representations were and are false and blatant misrepresentation of the character, amount, and legal status of the discharged Second Mortgage debt.

74.   Ocwen made the foregoing misrepresentations regarding the character, amount, and legal status of the discharged Second Mortgage debt to Nationwide in connection with Ocwen's attempts to collect the discharged Second Mortgage debt.

75.   Despite having actual knowledge that Scott Estep's personal liability for the Second Mortgage was discharged in Plaintiffs' Bankruptcy, Ocwen represented to Nationwide that Scott Estep was still personally liable for the Second Mortgage, and continued to attempt to collect on the Second Mortgage from Scott Estep.

76.   Accordingly, Ocwen's conduct was willful.

**Scott Estep's Equifax Consumer Reports**

77.   On or about December 22, 2015, Scott Estep obtained a copy of his consumer report as published by Equifax.

19

78.    That report contained erroneous information as provided by Ocwen and published and reported by Equifax. Specifically, the report stated that the Second Mortgage had a balance of $15,991.00, a past due balance of $1,877.00, a date of first delinquency of July, 2015, and was 120 days past due. A true and correct copy of the Ocwen Second Mortgage tradeline as it appeared in the December 22, 2015, Equifax report is as follows:



| Ocwen Loan Servicing, LLC | | | | Atto: Research Dept 12650 Ingenuity Dr Orlando FL 32826-2703 - (800) 746-2936 | | | | | | | | | | | | Creditor Classification | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Account Number 709043* | | Date Opened 08/16/2006 | High Credit $36,900 | Credit Limit | Terms Duration 30Y | Terms Frequency Monthly | | Months Revd 48 | Activity Designator | | | | | | | | | |
| Items As of Date Reported 10/31/2015 | Balance Amount $15,991 | Amount Past Due $1,877 | Date of Last Paymt 05/2015 | Actual Paymt Amount | Scheduled Payment Amount $375 | Date of 1st Delinquency 07/2015 | Date of Last Activity | Date Maj. Del. 1st Rptd | Charge Off Amount | | Deferred Pay Start Date | Balloon Pay Amount | | Balloon Pay Date | Date Closed | | | |

Status - Over 120 Days Past Due; Type of Account - Mortgage; Type of Loan - Second Mortgage; Whose Account - Individual Account;   ADDITIONAL INFORMATION - Real Estate Mortgage; Second Mortgage; 120 Days Past Due;

| Account History with Status Codes | 09/2015 | 08/2015 | 07/2015 | 04/2015 | 03/2015 | 12/2014 | 11/2014 | 10/2014 | 09/2014 | 08/2014 | 06/2014 | 05/2014 | 04/2014 | 03/2014 | 02/2014 | 01/2014 | 12/2013 | 11/2013 | 10/2013 | 09/2013 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3 | 2 | 1 | 2 | 1 | 2 | 4 | 5 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 |
| | 08/2013 | 07/2013 | 06/2013 | 05/2013 | 04/2013 | 03/2013 | 02/2013 | 01/2013 | 12/2012 | 11/2012 | 10/2012 | 09/2012 | 08/2012 | 07/2012 | 06/2012 | 05/2012 | 04/2012 | 03/2012 | 02/2012 | 01/2012 | 12/2011 |
| | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 |
| | 11/2011 | 10/2011 | | | | | | | | | | | | | | | | | | | |
| | 4 | 3 | | | | | | | | | | | | | | | | | | | |

79.    Because the Second Mortgage was discharged in Plaintiffs' Bankruptcy, the information described above was both false and misleading.

80.    In representing to Equifax that Scott Estep owes money that he does not owe, Ocwen's representations were and are false and blatant misrepresentation of the character, amount, and legal status of the discharged Second Mortgage debt.

81.    Ocwen made the foregoing misrepresentations regarding the character, amount, and legal status of the discharged Second Mortgage debt to Equifax in connection with Ocwen's attempts to collect the discharged Second Mortgage debt.

82.    In a letter dated February 9, 2016, Scott Estep disputed the inaccurate and misleading information directly to Equifax, and advised Equifax of the specific facts that rendered the reporting inaccurate and misleading.

83.    In a document dated February 18, 2016, Equifax advised Scott Estep that it had researched his dispute and that the revised report reflected its findings. Equifax provided a copy of the Ocwen Second Mortgage tradeline as reported that reproduced the delinquency errors identified by Scott Estep in his original dispute letter.

84.    The Ocwen tradeline on the Equifax reinvestigation report also now indicated that the Second Mortgage had been charged off in July of 2011.  A true and correct copy of the Ocwen Second Mortgage tradeline as it appeared in the February 18, 2016, Equifax reinvestigation report is as follows:

| Ocwen Loan Servicing, LLC | Attn: Research Dept 12650 Ingenuity Dr Orlando FL 32826-2703 ; (800) 746-2936 | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Months Revd | Activity Designator | Creditor Classification |
| 709043* | 08/01/2006 | $0 | $0 | 30Y | Monthly | 49 | | |

| Items As of Date Reported | Balance Amount | Amount Past Due | Date of Last Paymt | Actual Paymnt Amount | Scheduled Paymnt Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj Del. 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08/18/2015 $0 | $0 | $0 | 05/2015 $0 | $0 | $0 | 07/2015 | | 08/2015 $0 | | $0 | | | |

Status – Included In Wage Earner Plan; Type of Loan – Second Mortgage; Whose Account – Individual Account;   ADDITIONAL INFORMATION – Bankruptcy Chapter 13;

| Account History with Status Codes | 07/2011 06/2011 |
|---|---|
| | L    4 |

85.    Ocwen's representations to Equifax that the Second Mortgage debt was still 120 days past due, and had been charged off in in July 2011, was a blatant misrepresentation regarding the legal status of the discharged Second Mortgage debt.

86.    Ocwen made the foregoing misrepresentation Equifax in connection with Ocwen's attempts to collect  the discharged Second Mortgage debt.

87.    There is no indication in the tradeline of the "verified" Equifax reinvestigation report that Scott Estep disputed the information reported and published by Equifax and Ocwen.

88.    Equifax had a duty to notify Ocwen of Scott Estep's dispute.

89.    Equifax had a duty to conduct a reasonable reinvestigation to determine whether the information Scott Estep disputed was inaccurate, and to edit, modify or delete that information accordingly.

90.   After receiving notice of Scott Estep's dispute from Equifax, Ocwen had a duty to conduct an investigation with respect to the disputed information, a duty to review all relevant information provided by Equifax, and a duty to report the results of its investigation to Equifax.

91.   Upon information and belief, Equifax timely notified Ocwen of Scott Estep's dispute, as required by 11 U.S.C. § 1681i.

92.   Equifax and Ocwen, independently and jointly, breached their duties as described herein.

93.   Equifax and Ocwen both had actual notice that the information they were reporting regarding Scott Estep and the Second Mortgage was false, deceptive, and misleading.

94.   Equifax and Ocwen both failed to correct their false, deceptive, and misleading reporting as described herein.

95.   Equifax and Ocwen both continued to report the false, deceptive, and misleading information regarding Scott Estep and the Second Mortgage.

37.   Accordingly, Equifax's and Ocwen's conduct was willful.

**Scott Estep's Experian Reports**

96.     On or about December 18, 2015, Scott Estep obtained a copy of his consumer

        report as published by Experian.

97.     That report contained erroneous information as provided by BOA and published

        and reported by Experian. Specifically, the report stated that the First Mortgage

        was discharged in his bankruptcy.  A true and correct copy of the BOA First

        Mortgage tradeline as it appeared in the December 18, 2015, Experian report is

        as follows:

**BK OF AMER**
**Address:**                              **Account Number:**
4909 SAVARESE CIRCLE                      21601....
TAMPA, FL 33634
(800) 669-6607
**Address Identification Number:**
0065263884
**Mortgage Identification Number:**
100577710000217757
**Status:**  Discharged through Bankruptcy Chapter 13.

| | | |
|---|---|---|
| **Date Opened:** | **Type:** | **Credit Limit/Original** |
| 02/2010 | FHA Mortgage | **Amount:** |
| **Reported Since:** | **Terms:** | $153,439 |
| 03/2010 | 30 Years | **High Balance:** |
| **Date of Status:** | **Monthly Payment:** | NA |
| 08/2015 | $0 | **Recent Balance:** |
| **Last Reported:** | **Responsibility:** | $0 as of 05/2015 |
| 05/2015 | Joint with DEBRA L ESTEP | **Recent Payment:** |
| | | $0 |

**Comment:**  Account transferred to another lender.

98.     Because the First Mortgage was provided for in Plaintiffs' Chapter 13 Plan, and

        not discharged in the Bankruptcy, the information described above was both

        false and misleading.

99.     The December 18, 2015 Experian report also contained erroneous information

        as provided by Ocwen and published and reported by Experian. Specifically, the

        report stated that the Second Mortgage had a balance of $15,991.00, a past due

        balance of $1,877.00, and was charged off.   A true and correct copy of the

        Ocwen Second Mortgage tradeline as it appeared in the December 18, 2015,

        Experian report is as follows:

**OCWEN LOAN SERVICING**
**Address:**                        **Account Number:**
1661 WORTHINGTON RD STE 100   709043....
WEST PALM BEACH, FL 33409
(800) 746-2936
**Address Identification Number:**
0065263884
**Status:**  Account charged off. $15,991 written off. $1,877 past    **Status Details:**  This account is scheduled to continue
due as of Nov 2015.                                                   on record until Aug 2018.

**Date Opened:**          **Type:**              **Credit Limit/Original Amount:**
08/2006                   Mortgage               $36,900
**Reported Since:**       **Terms:**             **High Balance:**
10/2011                   30 Years               NA
**Date of Status:**       **Monthly Payment:**   **Recent Balance:**
11/2015                   $0                     $15,991 as of 11/2015
**Last Reported:**        **Responsibility:**    **Recent Payment:**
11/2015                   Individual             $0

25

100.   Because the Second Mortgage was discharged in Plaintiffs' Bankruptcy, the information described above was both false and misleading.

101.   In representing to Experian that Scott Estep owes money that he does not owe, Ocwen's representations were and are false and blatant misrepresentation of the character, amount, and legal status of the discharged Second Mortgage debt.

102.   Ocwen made the foregoing misrepresentations regarding the character, amount, and legal status of the discharged Second Mortgage debt to Experian in connection with Ocwen's attempts to collect the discharged Second Mortgage debt.

103.   In a letter dated December 21, 2015, Scott Estep disputed the inaccurate and misleading information directly to Experian and advised Experian of the specific facts that rendered the reporting inaccurate and misleading.

104.   In a document dated February 1, 2016, Experian advised Scott Estep that it had researched his dispute and that the revised report reflected its findings.

105.   Experian provided a copy of the BOA First Mortgage tradeline as reported that reproduced the errors identified by the Scott Estep in his original dispute letter. Specifically, the tradeline still stated that the First Mortgage was discharged in

bankruptcy.  A true and correct copy of the BOA First Mortgage tradeline as it appeared in the February 1, 2016 Experian reinvestigation report is as follows:

BK OF AMER
4909 SAVARESE CIR
TAMPA FL 33634
Phone number
(800) 669 6607
Partial account number
21601....
Address identification number
0065263884
Mortgage Identification Number
100577710000217757

Date opened Feb 2010
First reported Apr 2010
Date of status Jul 2011

Type FHA Mortgage
Terms 30 Years
Monthly payment Not reported

Credit limit or original amount $153,439
High balance Not reported

Recent balance $0 as of Jun 2011

Responsibility Joint with DEBRA L ESTEP
Status Discharged through Bankruptcy Chapter 13.
Comment: Account transferred to another lender.
This item was updated from our processing of your dispute in Jan 2016.
Account History Debt included in Chapter 13 Bankruptcy on July 22, 2011.

106.   In the February 1, 2016 reinvestigation report, Experian also provided a copy of the Ocwen Second Mortgage tradeline as reported that continued to show the account as having been charged off.  A true and correct copy of the Ocwen Second Mortgage tradeline as it appeared in the February 1, 2016 Experian reinvestigation report is as follows:

OCWEN LOAN SERVICING
1661 WORTHINGTON RD STE 100
WEST PALM BEACH FL 33409
Phone number
(800) 746 2936
Partial account number
709043....
Address identification number
0065263884

Date opened Aug 2008
First reported Nov 2011
Date of status Nov 2015

Type Mortgage
Terms 30 Years
Monthly payment Not reported

Credit limit or original amount Not reported
High balance Not reported

Recent balance Not reported

Responsibility Individual
Status Paid, Closed. $16,870 written off.
This item was updated from our processing of your dispute in Jan 2016.

Payment history

| 2015 | | | | | | 2014 | | | | | | | | | | | | 2013 | | | | | | | | | | | | 2012 | | | | | | | |
| NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL |
| CO | CO | NC | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | NC | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | NO | ND | ND | ND | ND |

| 2011 | | | | | | |
| MAY | APR | MAR | FEB | JAN | DEC | NOV |
| ND | ND | NC | ND | ND | CO | 180 |

107.   Ocwen's representations to Experian that the Second Mortgage debt had been charged off, as opposed to discharged in bankruptcy, was a blatant misrepresentation regarding the legal status of the discharged Second Mortgage debt.

108.   Ocwen made the foregoing misrepresentation regarding the legal status of the discharged Second Mortgage debt to Experian in connection with Ocwen's attempts to collect the discharged Second Mortgage debt.

109.   Experian had a duty to notify Ocwen and BOA of Scott Estep's dispute.

110.   Experian had a duty to conduct a reasonable reinvestigation to determine whether the information Scott Estep disputed was inaccurate, and to edit, modify or delete the disputed information accordingly.

111.   After receiving notice of Scott Estep's dispute from Experian, Ocwen had a duty to conduct an investigation with respect to the disputed information, a duty to review all relevant information provided by Experian, and a duty to report the results of its investigation to Experian.

112.   After receiving notice of Scott Estep's dispute from Experian, BOA had a duty to conduct an investigation with respect to the disputed information, a duty to

review all relevant information provided by Experian, and a duty to report the results of its investigation to Experian.

113. Upon information and belief, Experian timely notified Ocwen and BOA of Scott Estep's disputes, as required by 11 U.S.C. § 1681i.

114. Experian, BOA, and Ocwen, independently and jointly, breached their duties as described herein.

115. Experian and BOA both had actual notice that the information they were reporting regarding Scott Estep and the First Mortgage was false, deceptive, and misleading.

116. Experian and Ocwen both had actual notice that the information they were reporting regarding Scott Estep and the Second Mortgage was false, deceptive, and misleading.

117. Experian, BOA, and Ocwen each failed to correct their false, deceptive, and misleading reporting as described herein.

118. Experian and BOA both continued to report the false, deceptive, and misleading information regarding Scott Estep and the First Mortgage.

119. Experian and Ocwen both continued to report the false, deceptive, and misleading information regarding Scott Estep and the Second Mortgage.

120. Accordingly, Experian's, BOA's, and Ocwen's conduct was willful.

**Debra Estep's Experian Reports**

121. On or about December 18, 2015, Debra Estep obtained a copy of her consumer report as published by Experian.

122. That report contained erroneous information as provided by BOA and published and reported by Experian. Specifically, the report stated that the First Mortgage was discharged in his bankruptcy.  A true and correct copy of the First Mortgage tradeline as it appeared in the December 18, 2015 Experian report is as follows:

**BK OF AMER**
**Address:**
4909 SAVARESE CIRCLE
TAMPA, FL 33634
(800) 669-6607
**Address Identification Number:**
0065263884
**Mortgage Identification Number:**
100577710000217757

**Account Number:**
21601....

**Status:**  Discharged through Bankruptcy Chapter 13.

| **Date Opened:** | **Type:** | **Credit Limit/Original** |
|---|---|---|
| 02/2010 | FHA Mortgage | **Amount:** |
| **Reported Since:** | **Terms:** | $153,439 |
| 03/2010 | 30 Years | **High Balance:** |
| **Date of Status:** | **Monthly Payment:** | NA |

| 08/2015 | $0 | Recent Balance: |
| **Last Reported:** | **Responsibility:** | $0 as of 05/2015 |
| 05/2015 | Joint with SCOTT ESTEP | **Recent Payment:** |
| | | $0 |

**Comment:**  Account transferred to another lender.

123.   Because the First Mortgage was provided for in Plaintiffs' Chapter 13 Plan, and was not discharged in the Bankruptcy, the information described above was both false and misleading.

124.   In a letter dated December 21, 2015, Debra Estep disputed the inaccurate and misleading information directly to Experian and advised Experian of the specific facts that rendered the reporting inaccurate and misleading.

125.   In a document dated January 21, 2016, Experian advised Debra Estep that it had researched her dispute and that the revised report reflected its findings. Experian provided a copy of the BOA First Mortgage tradeline as reported that reproduced the errors identified by Debra Estep in her original dispute letter.  A true and correct copy of the BOA First Mortgage tradeline as it appeared in the January 21, 2016 Experian reinvestigation report is as follows:

■ Credit items

| BK OF AMER<br>4909 SAVARESE CIR<br>TAMPA FL 33634<br>**Phone number**<br>(800) 669 6607<br>**Partial account number**<br>21601...<br>**Address identification number**<br>0065263884<br>**Mortgage Identification Number**<br>100577710000217757 | **Date opened**<br>Feb 2010<br>**First reported**<br>Apr 2010<br>**Date of status**<br>Jul 2011 | **Type**<br>FHA<br>Mortgage<br>**Terms**<br>30 Years<br>**Monthly<br>payment**<br>Not reported | **Credit limit or<br>original amount**<br>$153,439<br>**High balance**<br>Not reported | **Recent balance**<br>$0 as of Jun 2011 | **Responsibility**<br>Joint with<br>SCOTT  ESTEP<br>**Status**<br>Discharged through Bankruptcy Chapter 13.<br>**Comment:**<br>Account transferred to another lender.<br>This item was updated from our processing of your dispute in<br>Jan 2016.<br>**Account History**<br>Debt included in Chapter 13 Bankruptcy on July  22, 2011. |
| --- | --- | --- | --- | --- | --- |

126.   Experian had a duty to notify BOA of Debra Estep's dispute.

127.   Experian had a duty to conduct a reasonable reinvestigation to determine whether the information Debra Estep disputed was inaccurate, and to edit, modify, or delete that information accordingly.

128.   After receiving notice of Debra Estep's dispute from Experian, BOA had a duty to conduct an investigation with respect to the disputed information, a duty to review all relevant information provided by Experian, and a duty to report the results of its investigation to Experian.

129.   Upon information and belief, Experian timely notified BOA of Debra Estep's dispute, as required by 11 U.S.C. § 1681i.

130.   Experian and BOA independently and jointly, breached their duties as described herein.

131.  Experian and BOA both had actual notice that the information they were reporting regarding Debra Estep and the First Mortgage was false, deceptive, and misleading.

132.  Experian and BOA both failed to correct their false, deceptive, and misleading reporting as described herein.

133.  Experian and BOA both continued to report the false, deceptive, and misleading information regarding Debra Estep and the First Mortgage.

134.  Accordingly, Experian's and BOA's conduct was willful.

**Nationwide's Collection Letter Mailed to Scott Estep**

135.  On or about March 3, 2016, Nationwide sent Scott Estep a debt collection letter, via US Mail, in an attempt to collect the discharged Second Mortgage debt. A true and correct copy of the relevant portion of the March 3, 2016 Nationwide debt collection letter is as follows:

 **Nationwide Credit, Inc.**

PO BOX 26314
LEHIGH VALLEY PA  18002-6314
Monday-Thursday 8:00 am-10 pm ET Fri 8:00 am -
4:30pm ET 1-855-771-1872

NCI ID: 15324135589
Loan Servicer: Ocwen Loan Servicing, LLC
Current Creditor Name: C-BASS 2007-SL1
Current Creditor Loan #: 7090435376
Borrower Name: SCOTT ESTEP
Loan Balance due as of 03/03/2016: $16,869.88

03/03/2016

Property Address:
4812 Helga Way Ne
Woodstock, GA 30188



**PAYOFF AGREEMENT**

Dear SCOTT ESTEP:

Upon receipt of your payment in full of $16,869.88 by 03/31/2016, NCI agrees to release the above-indicated matter as to any and all claims and damages against the above-mentioned debtor(s).

If you have any questions or would like to discuss this further, please contact us at our toll free number: 1-855-771-1872

You may send payments to:

| **Overnight Mail** | **Regular Mail** | **Bankwire** | **Online** | **Western Union** |
|---|---|---|---|---|
| Nationwide Credit, Inc. | Nationwide Credit, Inc | ABA#: 121000248 | PayNow.SolveMyDebt.Com | NCI |
| 1874 Catasauqua Road | PO Box 26314 | Acct #: 4121714612 | Acct #: 15324135589 | Code City: Money |
| Box 214 | Lehigh Valley PA 18002 | Wells Fargo | User ID: 547453 | Code State: GA |
| Allentown, PA 18109 | | 1000 Louisiana Street | | |
| | | Houston, TX 77002 | | |

Please be sure to reference your NCI account number 15324135589 on any payments or correspondence.  **To expedite correspondence that does not include a payment, please send it to: "Attn: Home Mortgage Consultant."**

Sincerely,

Nationwide Credit, Inc.

**This communication is an attempt to collect a debt by a debt collector or consumer collection agency and any information obtained will be used for that purpose.**

136.  In the March 3, 2016 letter, Nationwide represented to Scott Estep that he owed

a balance on the Second Mortgage in the amount of $16,869.88, and that said

amount was due immediately.

34

137. In the March 3, 2016 letter, Nationwide further stated that it would agree to release any and all claims and damages against Scott Estep if he would make payment to Nationwide in the amount of $16,869.88 by March 31, 2016.

138. Nationwide represented to Scott Estep that he was still personally liable for the Second Mortgage debt.

139. Nationwide's statement that it would agree to release any and all claims and damages against Scott Estep constituted a threat to take action that could not legally be taken.

140. Because the Second Mortgage was discharged in Plaintiffs' Bankruptcy, Nationwide's statements, representations and threat regarding the Second Mortgage described above were false, deceptive, and misleading.

141. Nationwide's representations to Scott Estep that he was still personally liable for the discharged Second Mortgage debt in the amount of $16,869.88, and that Nationwide could pursue claims and damages against him, were blatant misrepresentations regarding the legal status of the discharged Second Mortgage debt.

142.   Nationwide made the threat and misrepresentations described above in connection with Nationwide's attempts to collect the discharged Second Mortgage debt.

143.   Nationwide knew, or should have known, that Scott Estep's personal liability for the Second Mortgage was discharged in Plaintiffs' Bankruptcy.

144.   Nationwide knew, or should have known, that its representations regarding the character, amount and legal status of the Second Mortgage were false, deceptive, and misleading.

145.   Nationwide knew, or should have known, that its threat to pursue claims or damages against Scott Estep constituted a threat to take action that could not legally be taken.

146.   Despite having knowledge that Scott Estep had no personal liability for the Second Mortgage, and that its representations regarding the character, amount and legal status of the Second Mortgage were false, Nationwide made the aforementioned false representations and threat in an attempt to coerce Scott Estep into making a payment.

147.   Accordingly, Nationwide's conduct was willful.

36

**Damages**

148.  As a result of the Defendants' actions and omissions, Plaintiffs have been harmed.

149.  As a result of the Defendants' actions and omissions, Plaintiffs are eligible for statutory damages.

150.  As a result of the Defendants' actions and omissions, Plaintiffs have suffered actual damages, including out-of-pocket expenses in challenging the Defendants' wrongful representations regarding the First Mortgage and Second Mortgage, as well as frustration and aggravation resulting from the Defendants' false, deceptive and misleading representations.

151.  As a result of Ocwen's actions and omissions, Scott Estep has felt unfairly pursued, harassed, and annoyed.

152.  As a result of Nationwide's actions and omissions, Scott Estep has felt unfairly pursued, harassed, and annoyed.

153.  As a result of the actions and omissions of Equifax, Experian, Ocwen, and BOA, Plaintiffs' actual damages also include the illegitimate suppression of their Fair Isaac Corporation ("FICO") credit scores and other credit rating model scores.

37

154.   Moreover, Equifax's, Experian's, Ocwen's, and BOA's failures to correct and clear their false, deceptive, and misleading reporting creates a material risk of financial harm to Plaintiffs, stemming from the decreased perception of Plaintiffs' credit-worthiness.

## TRIAL BY JURY

155.   Plaintiffs are entitled to and hereby request a trial by jury.

## CAUSES OF ACTION

## COUNT I

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. §§ 1681e(b) and 1681i
## (Equifax Information Services, LLC)

156.   Plaintiffs incorporate by reference the preceding paragraphs as though fully stated herein.

157.   Pursuant to 15 U.S.C. § 1681e(b), Equifax is responsible for following reasonable procedures to assure maximum possible accuracy of information whenever it prepares consumer reports.

158.   Equifax's duty under 15 U.S.C. § 1681e(b) extends to reinvestigation reports and consumer disclosures.

159.   Pursuant to 15 U.S.C. § 1681i(a)(1)(A), Equifax had an affirmative duty to independently investigate Scott Estep's dispute of the Ocwen Second Mortgage Tradeline.

160.   Pursuant to 15 U.S.C. § 1681i(a)(2), Equifax was required to communicate the specifics of Scott Estep's dispute to Ocwen.

161.   A consumer reporting agency's reasonable reinvestigation must be a good faith effort to ascertain the truth; a reasonable reinvestigation must answer the substance of the consumer's dispute, and may not merely be a *pro forma* record review that simply begs the question.

162.   In order to conduct a reasonable reinvestigation, and pursuant to 15 U.S.C. § 1681i(a)(4), Equifax was required to review and consider all relevant information submitted by Scott Estep.

163.   Scott Estep's dispute was clear and unambiguous as to the inaccuracies of Equifax's reporting of the Ocwen Second Mortgage tradeline.

164.   Scott Estep provided all the relevant information necessary to Equifax to reinvestigate and correct the inaccuracies in its reporting.

165.   Equifax breached its duties as described herein.

39

166.   If Equifax had conducted a reasonable reinvestigation of Scott Estep's dispute, Equifax would have reviewed and considered all of the information Scott Estep submitted in his dispute letter, and would have easily detected that what was being reported was factually incorrect, inaccurate, and misleading.

167.   If Equifax had conducted a reasonable reinvestigation of Scott Estep's dispute, the Ocwen Second Mortgage tradeline on his Equifax consumer report would have been appropriately corrected.

168.   Due to Equifax's failures to follow reasonable procedures to assure maximum possible accuracy of information, and failures to conduct reasonable reinvestigations of Scott Estep's dispute, the false and misleading Ocwen Second Mortgage tradeline information in his credit file and on his Equifax report was not appropriately edited, modified, or deleted.

169.   Equifax had all the information necessary to correct its reporting. Yet, Equifax failed to correct the Ocwen Second Mortgage tradeline information in the face of clear evidence that its reporting was false and misleading. That failure indicates that Equifax's review procedures were not reasonable.

170.   The fact that Equifax had all the information necessary to correct its reporting, yet failed to do so in an appropriate manner, further indicates that Equifax recklessly disregarded Scott Estep's dispute, the requirements of the FCRA, and the recorded Bankruptcy discharge, amounting to a willful violation of the statute.

171.   Equifax willfully, or in the alternative negligently, violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of information concerning Scott Estep in his consumer reports, in reckless disregard of the statutory requirements, Scott Estep's dispute, and the publicly recorded bankruptcy filings.

172.   Equifax willfully, or in the alternative negligently, violated 15 U.S.C. § 1681i in multiple ways, including without limitation, by failing to conduct a reasonable reinvestigation of Scott Estep's dispute, and by failing thereafter to appropriately edit, modify, or delete the Ocwen Second Mortgage tradeline information in his file and on his consumer report in reckless disregard of the statutory requirements, Scott Estep's dispute, and the publicly recorded bankruptcy filings.

173. As a result of Equifax's violations of 15 U.S.C. §§ 1681e(b) and 1681i, Scott Estep has suffered actual damages as described herein. Scott Estep is, therefore, entitled to recover actual damages from Equifax pursuant to 15 U.S.C. §§ 1681n and 1681o.

174. Equifax's actions and omissions were willful, rendering Equifax liable to Scott Estep for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

175. Scott Estep is entitled to recover costs and attorneys' fees from Equifax pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT II

### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. §§ 1681e(b) and 1681i
### (Experian Information Solutions, Inc.)

176. Plaintiffs incorporate by reference the preceding paragraphs as though fully stated herein.

177. Pursuant to 15 U.S.C. § 1681e(b), Experian is responsible for following reasonable procedures to assure maximum possible accuracy of information whenever it prepares consumer reports.

42

178. Experian's duty under 15 U.S.C. § 1681e(b) extends to reinvestigation reports and consumer disclosures.

179. Pursuant to 15 U.S.C. § 1681i(a)(1)(A), Experian had an affirmative duty to independently investigate the Ocwen Second Mortgage tradeline dispute submitted by Scott Estep.

180. Pursuant to 15 U.S.C. § 1681i(a)(2), Experian was required to communicate the specifics of Scott Estep's dispute to Ocwen.

181. A consumer reporting agency's reasonable reinvestigation must be a good faith effort to ascertain the truth; a reasonable reinvestigation must answer the substance of the consumer's dispute, and may not merely be a *pro forma* record review that simply begs the question.

182. In order to conduct a reasonable reinvestigation, and pursuant to 15 U.S.C. § 1681i(a)(4), Experian was required to review and consider all relevant information submitted by Scott Estep.

183. Scott Estep's dispute was clear and unambiguous as to the inaccuracies of Experian's reporting of the Ocwen Second Mortgage tradeline.

184. Scott Estep provided all the relevant information necessary to Experian to reinvestigate and correct the inaccuracies in its reporting.

185. Experian breached its duties as described herein.

186. If Experian had conducted a reasonable reinvestigation of Scott Estep's dispute of the Ocwen Second Mortgage tradeline, Experian would have reviewed and considered all of the information Scott Estep submitted in his dispute letter, and would have easily detected that what was being reported was factually incorrect, inaccurate, and misleading.

187. If Experian had conducted a reasonable reinvestigation of Scott Estep's dispute, the Ocwen Second Mortgage tradeline on his Experian consumer report would have been appropriately corrected.

188. Due to Experian's failures to follow reasonable procedures to assure maximum possible accuracy of information, and failures to conduct reasonable reinvestigations of Scott Estep's dispute of the Ocwen Second Mortgage tradeline, the false and misleading information in his credit file and on his Experian report was not appropriately modified.

189. Experian had all the information necessary to correct its reporting. Yet, Experian failed to correct the Ocwen Second Mortgage tradeline information in the face of clear evidence that its reporting was false and misleading. That failure indicates that Experian's review procedures were not reasonable.

190. The fact that Experian had all the information necessary to correct its reporting, yet failed to do so in an appropriate manner, further indicates that Experian recklessly disregarded Scott Estep's dispute, the requirements of the FCRA, and the publicly recorded bankruptcy discharge, amounting to a willful violation of the statute.

191. Experian willfully, or in the alternative negligently, violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of information concerning Scott Estep in his consumer reports, in reckless disregard of the statutory requirements, Scott Estep's dispute, and the publicly recorded bankruptcy filings.

192. Experian willfully, or in the alternative negligently, violated 15 U.S.C. § 1681i in multiple ways, including without limitation, by failing to conduct a reasonable reinvestigation of Scott Estep's dispute, and by failing thereafter to

appropriately edit, modify, or delete the Ocwen Second Mortgage tradeline information in his file and on his consumer report, in reckless disregard of the statutory requirements, Scott Estep's dispute, and the publicly recorded bankruptcy filings.

193.   As a result of Experian's violations of 15 U.S.C. §§ 1681e(b) and 1681i, Scott Estep has suffered actual damages as described herein. Scott Estep is, therefore, entitled to recover actual damages from Experian pursuant to 15 U.S.C. §§ 1681n and 1681o.

194.   Experian's actions and omissions were willful, rendering Experian liable to Scott Estep for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

195.   Scott Estep is entitled to recover costs and attorneys' fees from Experian pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT III

### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. §§ 1681e(b) and 1681i
### (Experian Information Solutions, Inc.)

196.   Plaintiffs incorporate by reference the preceding paragraphs as though fully stated herein.

197.   Pursuant to 15 U.S.C. § 1681e(b), Experian is responsible for following reasonable procedures to assure maximum possible accuracy of information whenever it prepares consumer reports.

198.   Experian's duty under 15 U.S.C. § 1681e(b) extends to reinvestigation reports and consumer disclosures.

199.   Pursuant to 15 U.S.C. § 1681i(a)(1)(A), Experian had an affirmative duty to independently investigate the BOA First Mortgage tradeline dispute submitted by Scott Estep.

200.   Pursuant to 15 U.S.C. § 1681i(a)(2), Experian was required to communicate the specifics of Scott Estep's dispute to BOA.

201.   A consumer reporting agency's reasonable reinvestigation must be a good faith effort to ascertain the truth; a reasonable reinvestigation must answer the substance of the consumer's dispute, and may not merely be a *pro forma* record review that simply begs the question.

202. In order to conduct a reasonable reinvestigation, and pursuant to 15 U.S.C. § 1681i(a)(4), Experian was required to review and consider all relevant information submitted by Scott Estep.

203. Scott Estep's dispute was clear and unambiguous as to the inaccuracies of Experian's reporting of the BOA First Mortgage tradeline.

204. Scott Estep provided all the relevant information necessary to Experian to reinvestigate and correct the inaccuracies in its reporting.

205. Experian breached its duties as described herein.

206. If Experian had conducted a reasonable reinvestigation of Scott Estep's dispute of the BOA First Mortgage tradeline, Experian would have reviewed and considered all of the information Scott Estep submitted in his dispute letter, and would have easily detected that what was being reported was factually incorrect, inaccurate, and misleading.

207. If Experian had conducted a reasonable reinvestigation of Scott Estep's dispute, the BOA First Mortgage tradeline on his Experian consumer report would have been appropriately corrected.

208. Due to Experian's failures to follow reasonable procedures to assure maximum possible accuracy of information, and failures to conduct reasonable reinvestigations of Scott Estep's dispute of the BOA First Mortgage tradeline, the false and misleading information in his credit file and on his Experian report was not appropriately modified.

209. Experian had all the information necessary to correct its reporting. Yet, Experian failed to correct the BOA First Mortgage tradeline information in the face of clear evidence that its reporting was false and misleading. That failure indicates that Experian's review procedures were not reasonable.

210. The fact that Experian had all the information necessary to correct its reporting, yet failed to do so in an appropriate manner, further indicates that Experian recklessly disregarded Scott Estep's dispute and the requirements of the FCRA, amounting to a willful violation of the statute.

211. Experian willfully, or in the alternative negligently, violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of information concerning Scott Estep in his consumer

reports, in reckless disregard of the statutory requirements, Scott Estep's dispute, and the publicly recorded bankruptcy filings.

212. Experian willfully, or in the alternative negligently, violated 15 U.S.C. § 1681i in multiple ways, including without limitation, by failing to conduct a reasonable reinvestigation of Scott Estep's dispute, and by failing thereafter to appropriately edit, modify, or delete the BOA First Mortgage tradeline information in his file and on his consumer report, in reckless disregard of the statutory requirements, Scott Estep's dispute, and the publicly recorded bankruptcy filings.

213. As a result of Experian's violations of 15 U.S.C. §§ 1681e(b) and 1681i, Scott Estep has suffered actual damages as described herein. Scott Estep is, therefore, entitled to recover actual damages from Experian pursuant to 15 U.S.C. §§ 1681n and 1681o.

214. Experian's actions and omissions were willful, rendering Experian liable to Scott Estep for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

215. Scott Estep is entitled to recover costs and attorneys' fees from Experian pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT IV

**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. §§ 1681e(b) and 1681i**
**(Experian Information Solutions, Inc.)**

216. Plaintiffs incorporate by reference the preceding paragraphs as though fully stated herein.

217. Pursuant to 15 U.S.C. § 1681e(b), Experian is responsible for following reasonable procedures to assure maximum possible accuracy of information whenever it prepares consumer reports.

218. Experian's duty under 15 U.S.C. § 1681e(b) extends to reinvestigation reports and consumer disclosures.

219. Pursuant to 15 U.S.C. § 1681i(a)(1)(A), Experian had an affirmative duty to independently investigate the BOA First Mortgage tradeline dispute submitted by Debra Estep.

220. Pursuant to 15 U.S.C. § 1681i(a)(2), Experian was required to communicate the specifics of Debra Estep's dispute to BOA.

221.   A consumer reporting agency's reasonable reinvestigation must be a good faith effort to ascertain the truth; a reasonable reinvestigation must answer the substance of the consumer's dispute, and may not merely be a *pro forma* record review that simply begs the question.

222.   In order to conduct a reasonable reinvestigation, and pursuant to 15 U.S.C. § 1681i(a)(4), Experian was required to review and consider all relevant information submitted by Debra Estep.

223.   Debra Estep's dispute was clear and unambiguous as to the inaccuracies of Experian's reporting of the BOA First Mortgage tradeline.

224.   Debra Estep provided all the relevant information necessary to Experian to reinvestigate and correct the inaccuracies in its reporting.

225.   Experian breached its duties as described herein.

226.   If Experian had conducted a reasonable reinvestigation of Debra Estep's dispute of the BOA First Mortgage tradeline, Experian would have reviewed and considered all of the information Debra Estep submitted in her dispute letter, and would have easily detected that what was being reported was factually incorrect, inaccurate, and misleading.

227.  If Experian had conducted a reasonable reinvestigation of Debra Estep's dispute, the BOA First Mortgage tradeline on her Experian consumer report would have been appropriately corrected.

228.  Due to Experian's failures to follow reasonable procedures to assure maximum possible accuracy of information, and failures to conduct reasonable reinvestigations of Debra Estep's dispute of the BOA First Mortgage tradeline, the false and misleading information in her credit file and on her Experian report was not appropriately modified.

229.  Experian had all the information necessary to correct its reporting. Yet, Experian failed to correct the BOA First Mortgage tradeline information in the face of clear evidence that its reporting was false and misleading. That failure indicates that Experian's review procedures were not reasonable.

230.  The fact that Experian had all the information necessary to correct its reporting, yet failed to do so in an appropriate manner, further indicates that Experian recklessly disregarded Debra Estep's dispute and the requirements of the FCRA, amounting to a willful violation of the statute.

231. Experian willfully, or in the alternative negligently, violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of information concerning Debra Estep in her consumer reports, in reckless disregard of the statutory requirements, Debra Estep's dispute, and the publicly recorded bankruptcy filings.

232. Experian willfully, or in the alternative negligently, violated 15 U.S.C. § 1681i in multiple ways, including without limitation, by failing to conduct a reasonable reinvestigation of Debra Estep's dispute, and by failing thereafter to appropriately edit, modify, or delete the BOA First Mortgage tradeline information in her file and on her consumer report, in reckless disregard of the statutory requirements, Debra Estep's dispute, and the publicly recorded bankruptcy filings.

233. As a result of Experian's violations of 15 U.S.C. §§ 1681e(b) and 1681i, Debra Estep has suffered actual damages as described herein. Debra Estep is, therefore, entitled to recover actual damages from Experian pursuant to 15 U.S.C. §§ 1681n and 1681o.

234.   Experian's actions and omissions were willful, rendering Experian liable to Debra Estep for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

235.   Debra Estep is entitled to recover costs and attorneys' fees from Experian pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT V

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681s-2(b) (Bank of America Corporation)

236.   Plaintiffs incorporate by reference the preceding paragraphs as though fully stated herein.

237.   Pursuant to 15 U.S.C. § 1681s-2(a), BOA is responsible for providing accurate information whenever it furnishes information to any consumer reporting agencies.

238.   Upon information and belief, Experian timely notified BOA of Scott Estep's dispute, and provided BOA with all the relevant information that Scott Estep had submitted.

239.   Pursuant to 15 U.S.C. § 1681s-2(b), BOA had a duty to investigate Scott Estep's dispute and accurately report its findings to Experian.

240.   A furnisher's investigation must each be a good faith effort to ascertain the truth; a reasonable investigation must answer the substance of the consumer's dispute, and may not merely be a *pro forma* record review that simply begs the question.

241.   In order to conduct a reasonable investigation, and pursuant to 15 U.S.C. § 1681s-2(b), BOA was required to review and consider all relevant information submitted by Scott Estep to Experian.

242.   Scott Estep's dispute regarding the BOA First Mortgage tradeline was clear and unambiguous as to the inaccuracies of in the reporting of the BOA First Mortgage tradeline.

243.   Scott Estep provided all the relevant information necessary for BOA to investigate and correct the discrepancies in the reporting of the BOA First Mortgage tradeline.

244.   BOA breached its duties as described herein.

245.   If BOA had conducted a reasonable investigation of Scott Estep's dispute, BOA would have reviewed and considered all of the information Scott Estep

56

submitted to Experian in his dispute, and would have easily detected that what it was reporting regarding the BOA First Mortgage tradeline was factually incorrect, inaccurate, and misleading.

246.   If BOA had conducted a reasonable investigation of Scott Estep's dispute, the BOA First Mortgage tradeline on Scott Estep's consumer report would have been corrected accordingly.

247.   Due to BOA's failures to provide accurate information, and failures to conduct reasonable investigations of Scott Estep's dispute, the false and misleading information in his credit file and on his consumer reports as described herein was not appropriately edited, modified, or deleted.

248.   BOA had all the information necessary to correct its reporting. Yet, BOA failed to appropriately correct its reporting in the face of clear evidence that it was false and misleading. That failure indicates that BOA's review procedures were not reasonable.

249.   The fact that BOA had all the information necessary to correct its reporting, yet failed to appropriately do so, further indicates that BOA recklessly disregarded

Scott Estep's dispute and the requirements of the FCRA, amounting to a willful violation of the statute.

250.   BOA willfully, or in the alternative negligently, violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation upon receiving notice of Scott Estep's dispute from Experian, by failing to consider all of the information Scott Estep submitted to Experian in his dispute, by failing to appropriately report the results of its investigation, and/or by failing to appropriately edit, modify, or delete the disputed information, in reckless disregard of the statutory requirements, Scott Estep's dispute, and the publicly recorded bankruptcy filings.

251.   As a result of BOA's violations of 15 U.S.C. § 1681s-2(b), Scott Estep has suffered actual damages as stated herein. Scott Estep is, therefore, entitled to recover actual damages from BOA under 15 U.S.C. §§ 1681n and 1681o.

252.   BOA's actions and omissions were willful, rendering BOA liable to Scott Estep for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

253.   Scott Estep is entitled to recover costs and attorneys' fees from BOA pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT VI

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT,
## 15 U.S.C. § 1681s-2(b)
## (Bank of America Corporation)

254.  Plaintiffs incorporate by reference the preceding paragraphs as though fully stated herein.

255.  Pursuant to 15 U.S.C. § 1681s-2(a), BOA is responsible for providing accurate information whenever it furnishes information to any consumer reporting agencies.

256.  Upon information and belief, Experian timely notified BOA of Debra Estep's dispute, and provided BOA with all the relevant information that Debra Estep had submitted.

257.  Pursuant to 15 U.S.C. § 1681s-2(b), BOA had a duty to investigate Scott Estep's dispute and accurately report its findings to Experian.

258.  A furnisher's investigation must each be a good faith effort to ascertain the truth; a reasonable investigation must answer the substance of the consumer's dispute, and may not merely be a *pro forma* record review that simply begs the question.

259. In order to conduct a reasonable investigation, and pursuant to 15 U.S.C. § 1681s-2(b), BOA was required to review and consider all relevant information submitted by Debra Estep to Experian.

260. Debra Estep's dispute regarding the BOA First Mortgage tradeline was clear and unambiguous as to the inaccuracies of in the reporting of the BOA First Mortgage tradeline.

261. Debra Estep provided all the relevant information necessary for BOA to investigate and correct the discrepancies in the reporting of the BOA First Mortgage tradeline.

262. BOA breached its duties as described herein.

263. If BOA had conducted a reasonable investigation of Debra Estep's dispute, BOA would have reviewed and considered all of the information Debra Estep submitted to Experian in her dispute, and would have easily detected that what it was reporting regarding the BOA First Mortgage tradeline was factually incorrect, inaccurate, and misleading.

264. If BOA had conducted a reasonable investigation of Debra Estep's dispute, the BOA First Mortgage tradeline on Debra Estep's consumer report would have been corrected accordingly.

265. Due to BOA's failures to provide accurate information, and failures to conduct reasonable investigations of Debra Estep's dispute, the false and misleading information in her credit file and on her consumer reports as described herein was not appropriately edited, modified, or deleted.

266. BOA had all the information necessary to correct its reporting. Yet, BOA failed to appropriately correct its reporting in the face of clear evidence that it was false and misleading. That failure indicates that BOA's review procedures were not reasonable.

267. The fact that BOA had all the information necessary to correct its reporting, yet failed to appropriately do so, further indicates that BOA recklessly disregarded Debra Estep's dispute and the requirements of the FCRA, amounting to a willful violation of the statute.

268. BOA willfully, or in the alternative negligently, violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation upon receiving notice of Debra

Estep's dispute from Experian, by failing to consider all of the information Debra Estep submitted to Experian in her dispute, by failing to appropriately report the results of its investigation, and/or by failing to appropriately edit, modify, or delete the disputed information, in reckless disregard of the statutory requirements, Debra Estep's dispute, and the publicly recorded bankruptcy filings.

269.   As a result of BOA's violations of 15 U.S.C. § 1681s-2(b), Debra Estep has suffered actual damages as stated herein. Debra Estep is, therefore, entitled to recover actual damages from BOA under 15 U.S.C. §§ 1681n and 1681o.

270.   BOA's actions and omissions were willful, rendering BOA liable to Debra Estep for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

271.   Debra Estep is entitled to recover costs and attorneys' fees from BOA pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT VII

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681s-2(b) (Ocwen Loan Servicing, LLC)

272.   Plaintiffs incorporate by reference the preceding paragraphs as though fully stated herein.

273.   Pursuant to 15 U.S.C. § 1681s-2(a), Ocwen is responsible for providing accurate information whenever it furnishes information to any consumer reporting agencies.

274.   Upon information and belief, Equifax timely notified Ocwen of Scott Estep's dispute, and provided Ocwen with all the relevant information that Scott Estep had submitted.

275.   Pursuant to 15 U.S.C. § 1681s-2(b), Ocwen had a duty to investigate Scott Estep's dispute and accurately report its findings to Equifax.

276.   A furnisher's investigation must each be a good faith effort to ascertain the truth; a reasonable investigation must answer the substance of the consumer's dispute, and may not merely be a *pro forma* record review that simply begs the question.

277.   In order to conduct a reasonable investigation, and pursuant to 15 U.S.C. § 1681s-2(b), Ocwen was required to review and consider all relevant information submitted by Scott Estep to Equifax.

278. Scott Estep's dispute regarding the Ocwen Second Mortgage tradeline was clear and unambiguous as to the inaccuracies of in the reporting of the Ocwen Second Mortgage tradeline.

279. Scott Estep provided all the relevant information necessary for Ocwen to investigate and correct the discrepancies in the reporting of the Ocwen Second Mortgage tradeline.

280. Ocwen breached its duties as described herein.

281. If Ocwen had conducted a reasonable investigation of Scott Estep's dispute, Ocwen would have reviewed and considered all of the information Scott Estep submitted to Equifax in his dispute, and would have easily detected that what it was reporting regarding the Ocwen Second Mortgage tradeline was factually incorrect, inaccurate, and misleading.

282. If Ocwen had conducted a reasonable investigation of Scott Estep's dispute, the Ocwen Second Mortgage tradeline on Scott Estep's consumer report would have been corrected accordingly.

283. Due to Ocwen's failures to provide accurate information, and failures to conduct reasonable investigations of Scott Estep's dispute, the false and misleading

information in his credit file and on his consumer reports as described herein was not appropriately edited, modified, or deleted.

284. Ocwen had all the information necessary to correct its reporting. Yet Ocwen failed to appropriately correct its reporting in the face of clear evidence that it was false and misleading. That failure indicates that Ocwen's review procedures were not reasonable.

285. The fact that Ocwen had all the information necessary to correct its reporting, yet failed to appropriately do so, further indicates that Ocweb recklessly disregarded Scott Estep's dispute and the requirements of the FCRA, amounting to a willful violation of the statute.

286. Ocwen willfully, or in the alternative negligently, violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation upon receiving notice of Scott Estep's dispute from Equifax, by failing to consider all of the information Scott Estep submitted to Equifax in his dispute, by failing to appropriately report the results of its investigation, and/or by failing to appropriately edit, modify, or delete the disputed information, in reckless disregard of the statutory

requirements, Scott Estep's dispute, and the publicly recorded bankruptcy filings.

287.   As a result of Ocwen's violations of 15 U.S.C. § 1681s-2(b), Scott Estep has suffered actual damages as stated herein. Scott Estep is, therefore, entitled to recover actual damages from Ocwen under 15 U.S.C. §§ 1681n and 1681o.

288.   Ocwen's actions and omissions were willful, rendering Ocwen liable to Scott Estep for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

289.   Scott Estep is entitled to recover costs and attorneys' fees from Ocwen pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT VIII

### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT,
### 15 U.S.C. § 1681s-2(b)
### (Ocwen Loan Servicing, LLC)

290.   Plaintiffs incorporate by reference the preceding paragraphs as though fully stated herein.

291.   Pursuant to 15 U.S.C. § 1681s-2(a), Ocwen is responsible for providing accurate information whenever it furnishes information to any consumer reporting agencies.

292.   Upon information and belief, Experian timely notified Ocwen of Scott Estep's dispute, and provided Ocwen with all the relevant information that Scott Estep had submitted.

293.   Pursuant to 15 U.S.C. § 1681s-2(b), Ocwen had a duty to investigate Scott Estep's dispute and accurately report its findings to Experian.

294.   A furnisher's investigation must each be a good faith effort to ascertain the truth; a reasonable investigation must answer the substance of the consumer's dispute, and may not merely be a *pro forma* record review that simply begs the question.

295.   In order to conduct a reasonable investigation, and pursuant to 15 U.S.C. § 1681s-2(b), Ocwen was required to review and consider all relevant information submitted by Scott Estep to Experian.

296.   Scott Estep's dispute regarding the Ocwen Second Mortgage tradeline was clear and unambiguous as to the inaccuracies of in the reporting of the Ocwen Second Mortgage tradeline.

297. Scott Estep provided all the relevant information necessary for Ocwen to investigate and correct the discrepancies in the reporting of the Ocwen Second Mortgage tradeline.

298. Ocwen breached its duties as described herein.

299. If Ocwen had conducted a reasonable investigation of Scott Estep's dispute, Ocwen would have reviewed and considered all of the information Scott Estep submitted to Experian in his dispute, and would have easily detected that what it was reporting regarding the Ocwen Second Mortgage tradeline was factually incorrect, inaccurate, and misleading.

300. If Ocwen had conducted a reasonable investigation of Scott Estep's dispute, the Ocwen Second Mortgage tradeline on Scott Estep's consumer report would have been corrected accordingly.

301. Due to Ocwen's failures to provide accurate information, and failures to conduct reasonable investigations of Scott Estep's dispute, the false and misleading information in his credit file and on his consumer reports as described herein was not appropriately edited, modified, or deleted.

302. Ocwen had all the information necessary to correct its reporting. Yet Ocwen failed to appropriately correct its reporting in the face of clear evidence that it was false and misleading. That failure indicates that Ocwen's review procedures were not reasonable.

303. The fact that Ocwen had all the information necessary to correct its reporting, yet failed to appropriately do so, further indicates that Ocweb recklessly disregarded Scott Estep's dispute and the requirements of the FCRA, amounting to a willful violation of the statute.

304. Ocwen willfully, or in the alternative negligently, violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation upon receiving notice of Scott Estep's dispute from Experian, by failing to consider all of the information Scott Estep submitted to Experian in his dispute, by failing to appropriately report the results of its investigation, and/or by failing to appropriately edit, modify, or delete the disputed information, in reckless disregard of the statutory requirements, Scott Estep's dispute, and the publicly recorded bankruptcy filings.

305.   As a result of Ocwen's violations of 15 U.S.C. § 1681s-2(b), Scott Estep has suffered actual damages as stated herein. Scott Estep is, therefore, entitled to recover actual damages from Ocwen under 15 U.S.C. §§ 1681n and 1681o.

306.   Ocwen's actions and omissions were willful, rendering Ocwen liable to Scott Estep for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

307.   Scott Estep is entitled to recover costs and attorneys' fees from Ocwen pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT IX

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), and 1692e(10) (Ocwen Loan Servicing, LLC)

308.   Plaintiffs incorporate by reference the preceding paragraphs as though fully stated herein.

309.   Ocwen was served notice from the Bankruptcy Noticing Center that the Second Mortgage was discharged in Plaintiffs' Bankruptcy.

310.   Despite having actual knowledge that Scott Estep's personal liability for the Second Mortgage debt was discharged in Plaintiffs' Bankruptcy, Ocwen

represented to Equifax that Scott Estep was personally liable for the Second Mortgage, in connection with Ocwen's attempts to collect on the discharged Second Mortgage from Scott Estep.

311. In connection with its attempts to collect the discharged Second Mortgage debt, Ocwen falsely represented to Equifax that the Second Mortgage had a balance of $15,991.00, a past due balance of $1,877.00, a date of first delinquency of July, 2015, and was 120 days past due.

312. In connection with its attempts to collect the discharged Second Mortgage debt, Ocwen falsely represented to Equifax that the Second Mortgage had been charged off.

313. Ocwen's provision of false, deceptive and misleading information regarding the character, amount, and legal status to Equifax, in connection with its attempts to collect the discharged Second Mortgage debt, violated multiple provisions of the FDCPA, including without limitation 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), and 1692e(10).

314. As a result of Ocwen's violations of the FDCPA, Scott Estep has suffered actual damages as described herein.  Scott Estep is therefore entitled to recover actual damages from Ocwen under 15 U.S.C. § 1692k.

315. Under 15 U.S.C. § 1692k, Scott Estep is also entitled to recover from Ocwen $1,000 in statutory damages, reasonable attorney's fees, and costs.

## COUNT X

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT,
15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), and 1692e(10)
(Ocwen Loan Servicing, LLC)**

316. Plaintiffs incorporate by reference the preceding paragraphs as though fully stated herein.

317. Ocwen was served notice from the Bankruptcy Noticing Center that the Second Mortgage was discharged in Plaintiffs' Bankruptcy.

318. Despite having actual knowledge that Scott Estep's personal liability for the Second Mortgage debt was discharged in Plaintiffs' Bankruptcy, Ocwen represented to Experian that Scott Estep was personally liable for the Second Mortgage, in connection with Ocwen's attempts to collect on the discharged Second Mortgage from Scott Estep.

319.   In connection with its attempts to collect the discharged Second Mortgage debt, Ocwen falsely represented to Experian that the Second Mortgage had a balance of $15,991.00, a past due balance of $1,877.00, a date of first delinquency of July, 2015, and was 120 days past due.

320.   In connection with its attempts to collect the discharged Second Mortgage debt, Ocwen falsely represented to Experian that the Second Mortgage had been charged off.

321.   Ocwen's provision of false, deceptive and misleading information regarding the character, amount, and legal status to Experian in connection with its attempts to collect the discharged Second Mortgage debt violated multiple provisions of the FDCPA, including without limitation 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), and 1692e(10).

322.   As a result of Ocwen's violations of the FDCPA, Scott Estep has suffered actual damages as described herein.  Scott Estep is therefore entitled to recover actual damages from Ocwen under 15 U.S.C. § 1692k.

323.   Under 15 U.S.C. § 1692k, Scott Estep is also entitled to recover from Ocwen $1,000 in statutory damages, reasonable attorney's fees, and costs.

## COUNT XI

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), and 1692e(10) (Ocwen Loan Servicing, LLC)

324.   Plaintiffs incorporate by reference all preceding paragraphs as though fully stated herein.

325.   Ocwen had actual notice that the Second Mortgage was discharged in Plaintiffs' Bankruptcy.

326.   As such, Ocwen knew, or should have known, that the information regarding the Second Mortgage in the Mortgage Account Statements it mailed to Scott Estep was false, deceptive, and misleading.

327.   Ocwen sent the Mortgage Account Statements containing the false, deceptive, and misleading information regarding the Second Mortgage to Scott Estep in connection with its efforts to collect the discharged Second Mortgage debt.

328.   The false, deceptive, and misleading information contained in Ocwen's November 24, 2015 Mortgage Account Statement, that was mailed to Scott Estep in connection with Ocwen's attempts to collect the discharged Second

Mortgage debt, violated multiple provisions of the FDCPA, including without limitation 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), and 1692e(10).

329.    As a result of Ocwen's violations of the FDCPA, Scott Estep has suffered actual damages as described herein.  Scott Estep is therefore entitled to recover actual damages from Ocwen under 15 U.S.C. § 1692k.

330.    Under 15 U.S.C. § 1692k, Scott Estep is also entitled to recover from Ocwen $1,000 in statutory damages, reasonable attorney's fees, and costs.

## COUNT XII

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT,
15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), and 1692e(10)
(Ocwen Loan Servicing, LLC)**

331.    Plaintiffs incorporate by reference all preceding paragraphs as though fully stated herein.

332.    Ocwen had actual notice that the Second Mortgage was discharged in Plaintiffs' Bankruptcy.

333.    As such, Ocwen knew, or should have known, that the information regarding the Second Mortgage in the Mortgage Account Statements it mailed to Scott Estep was false, deceptive, and misleading.

334.   Ocwen sent the Mortgage Account Statements containing the false, deceptive, and misleading information regarding the Second Mortgage to Scott Estep in connection with its efforts to collect the discharged Second Mortgage debt.

335.   The false, deceptive, and misleading information contained in Ocwen's December 22, 2015 Mortgage Account Statement, that was mailed to Scott Estep in connection with Ocwen's attempts to collect the discharged Second Mortgage debt, violated multiple provisions of the FDCPA, including without limitation 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), and 1692e(10).

336.   As a result of Ocwen's violations of the FDCPA, Scott Estep has suffered actual damages as described herein.  Scott Estep is therefore entitled to recover actual damages from Ocwen under 15 U.S.C. § 1692k.

337.   Under 15 U.S.C. § 1692k, Scott Estep is also entitled to recover from Ocwen $1,000 in statutory damages, reasonable attorney's fees, and costs.

## COUNT XIII

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT,
15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), and 1692e(10)
(Ocwen Loan Servicing, LLC)**

338.   Plaintiffs incorporate by reference all preceding paragraphs as though fully stated herein.

339.   Ocwen had actual notice that the Second Mortgage was discharged in Plaintiffs' Bankruptcy.

340.   As such, Ocwen knew, or should have known, that the information regarding the Second Mortgage in the Mortgage Account Statements it mailed to Scott Estep was false, deceptive, and misleading.

341.   Ocwen sent the Mortgage Account Statements containing the false, deceptive, and misleading information regarding the Second Mortgage to Scott Estep in connection with its efforts to collect the discharged Second Mortgage debt.

342.   The false, deceptive, and misleading information contained in Ocwen's January 22, 2015 Mortgage Account Statement, that was mailed to Scott Estep in connection with Ocwen's attempts to collect the discharged Second Mortgage debt, violated multiple provisions of the FDCPA, including without limitation 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), and 1692e(10).

343. As a result of Ocwen's violations of the FDCPA, Scott Estep has suffered actual damages as described herein.  Scott Estep is therefore entitled to recover actual damages from Ocwen under 15 U.S.C. § 1692k.

344. Under 15 U.S.C. § 1692k, Scott Estep is also entitled to recover from Ocwen $1,000 in statutory damages, reasonable attorney's fees, and costs.

## COUNT XIV

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), and 1692e(10) (Ocwen Loan Servicing, LLC)

345. Plaintiffs incorporate by reference all preceding paragraphs as though fully stated herein.

346. In connection with its attempts to collect the discharged Second Mortgage debt, Ocwen referred the discharged Second Mortgage debt to Nationwide for collection.

347. In connection with its attempts to collect the discharged Second Mortgage debt, Ocwen falsely represented to Nationwide that Scott Estep was still personally liable for the discharged Second Mortgage debt.

348.   Ocwen had actual notice that the Second Mortgage was discharged in Plaintiffs' Bankruptcy.

349.   As such, Ocwen knew, or should have known, that its representations to Nationwide, that Scott Estep was still personally liable for the discharged Second Mortgage debt, were false, deceptive, and misleading.

350.   Ocwen's false, deceptive, and misleading representations to Nationwide in connection with its attempts to collect the discharged Second Mortgage debt violated multiple provisions of the FDCPA, including without limitation 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), and 1692e(10).

351.   As a result of Ocwen's violations of the FDCPA, Scott Estep has suffered actual damages as described herein.  Scott Estep is therefore entitled to recover actual damages from Ocwen under 15 U.S.C. § 1692k.

352.   Under 15 U.S.C. § 1692k, Scott Estep is also entitled to recover from Ocwen $1,000 in statutory damages, reasonable attorney's fees, and costs.

## COUNT XV

## VIOLATIONS OF THE BANKRUPTCY DISCHARGE INJUNCTION WARRANTING A FINDING OF CONTEMPT AND THE AWARD OF SANCTIONS

## 11 U.S.C. § 524(a)(2)
### (Ocwen Loan Servicing, LLC)

353.   Plaintiffs incorporate by reference all preceding paragraphs as though fully stated herein.

354.   Ocwen was served notice from the Bankruptcy Noticing Center that the Second Mortgage was discharged in Plaintiffs' Bankruptcy.

355.   Despite being served with notice of discharge, Ocwen continued its efforts to collect the discharged Second Mortgage debt from Scott Estep.

356.   Ocwen willfully violated 11 U.S.C. § 524(a)(2) by attempting to collect the discharged Second Mortgage debt from Scott Estep by reporting post-bankruptcy derogatory collection information to Equifax, including that there was still a balance in active collection.

357.   After receiving actual notice of its false and misleading post-discharge report, and a specific request to remedy the false report, Ocwen reported to Equifax that the Second Mortgage debt was charged off, as opposed to discharged in bankruptcy.

358.   By reporting the Second Mortgage debt to Equifax as charged off, as opposed to discharged in bankruptcy, Ocwen continues to represent that Scott Estep is personally liable for the discharged Second Mortgage debt.

359.   Ocwen has continued its efforts to collect the discharged Second Mortgage debt by, among other things, sending false Mortgage Account Statements to Scott Estep, and referring the Second Mortgage debt to Nationwide for collections.

360.   Ocwen's actions and omissions in furtherance of its attempts to collect the discharged Second Mortgage debt are willful, rendering Ocwen liable for civil contempt sanctions.

## COUNT XVI

### VIOLATIONS OF THE BANKRUPTCY DISCHARGE INJUNCTION WARRANTING A FINDING OF CONTEMPT AND THE AWARD OF SANCTIONS
### 11 U.S.C. § 524(a)(2)
### (Ocwen Loan Servicing, LLC)

361.   Plaintiffs incorporate by reference all preceding paragraphs as though fully stated herein.

362.   Ocwen was served notice from the Bankruptcy Noticing Center that the Second Mortgage was discharged in Plaintiffs' Bankruptcy.

363.   Despite being served with notice of discharge, Ocwen continued its efforts to collect the discharged Second Mortgage debt from Scott Estep.

364.   Ocwen willfully violated 11 U.S.C. § 524(a)(2) by attempting to collect the discharged Second Mortgage debt from Scott Estep by reporting post-bankruptcy derogatory collection information to Experian, including that there was still a balance in active collection.

365.   After receiving actual notice of its false and misleading post-discharge report, and a specific request to remedy the false report, Ocwen reported to Experian that the Second Mortgage debt was charged off, as opposed to discharged in bankruptcy.

366.   By reporting the Second Mortgage debt to Experian as charged off, as opposed to discharged in bankruptcy, Ocwen continues to represent that Scott Estep is personally liable for the discharged Second Mortgage debt.

367.   Ocwen has continued its efforts to collect the discharged Second Mortgage debt by, among other things, sending false Mortgage Account Statements to Scott Estep, and referring the Second Mortgage debt to Nationwide for collections.

368. Ocwen's actions and omissions in furtherance of its attempts to collect the discharged Second Mortgage debt are willful, rendering Ocwen liable for civil contempt sanctions.

## COUNT XVII

### VIOLATIONS OF THE BANKRUPTCY DISCHARGE INJUNCTION WARRANTING A FINDING OF CONTEMPT AND THE AWARD OF SANCTIONS 11 U.S.C. § 524(a)(2) (Ocwen Loan Servicing, LLC)

369. Plaintiffs incorporate by reference all preceding paragraphs as though fully stated herein.

370. Ocwen was served notice from the Bankruptcy Noticing Center that the Second Mortgage was discharged in Plaintiffs' Bankruptcy.

371. Despite being served with notice of discharge, Ocwen continued its efforts to collect the discharged Second Mortgage debt from Scott Estep.

372. Ocwen willfully violated 11 U.S.C. § 524(a)(2) by attempting to collect the discharged Second Mortgage debt from Scott Estep by sending false Mortgage Account Statements to Scott Estep and requesting payment.

373. Ocwen's actions and omissions in furtherance of its attempts to collect the discharged Second Mortgage debt are willful, rendering Ocwen liable for civil contempt sanctions.

## COUNT XVIII

## VIOLATIONS OF THE BANKRUPTCY DISCHARGE INJUNCTION
## WARRANTING A FINDING OF CONTEMPT AND
## THE AWARD OF SANCTIONS
## 11 U.S.C. § 524(a)(2)
## (Ocwen Loan Servicing, LLC)

374. Plaintiffs incorporate by reference all preceding paragraphs as though fully stated herein.

375. Ocwen was served notice from the Bankruptcy Noticing Center that the Second Mortgage was discharged in Plaintiffs' Bankruptcy.

376. Despite being served with notice of discharge, Ocwen continued its efforts to collect the discharged Second Mortgage debt from Scott Estep.

377. Ocwen willfully violated 11 U.S.C. § 524(a)(2) by attempting to collect the discharged Second Mortgage debt from Scott Estep by referring the Second Mortgage to Nationwide for collections.

378.   Ocwen's actions and omissions in furtherance of its attempts to collect the discharged Second Mortgage debt are willful, rendering Ocwen liable for civil contempt sanctions.

## COUNT XIX

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5) 1692e(8), and 1692e(10) (Nationwide Credit, Inc.)

379.   Plaintiffs incorporate by reference all preceding paragraphs as though fully stated herein.

380.   In connection with its attempts to collect the discharged Second Mortgage debt, Nationwide sent Scott Estep a collection letter that falsely represented that Scott Estep was still personally liable for the discharged Second Mortgage debt.

381.   In connection with its attempts to collect the discharged Second Mortgage debt, Nationwide threatened to take action against Scott Estep that cannot legally be taken.

382.   Accordingly, Nationwide's March 3, 2016 collection letter to Scott Estep, sent in connection with its attempts to collect the discharged Second Mortgage debt,

violated multiple provisions of the FDCPA, including without limitation 15 U.S.C. §§ 1692e, 1692e(2), 1692 e(5), 1692e(8), and 1692e(10).

383. As a result of Nationwide's violations of the FDCPA, Scott Estep has suffered actual damages as described herein. Scott Estep is therefore entitled to recover actual damages from Nationwide under 15 U.S.C. § 1692k.

384. Under 15 U.S.C. § 1692k, Scott Estep is also entitled to recover from Nationwide $1,000 in statutory damages, reasonable attorney's fees, and costs.

## COUNT XX

## VIOLATIONS OF THE BANKRUPTCY DISCHARGE INJUNCTION WARRANTING A FINDING OF CONTEMPT AND THE AWARD OF SANCTIONS 11 U.S.C. § 524(a)(2) (Nationwide Credit, Inc.)

385. Plaintiffs incorporate by reference all preceding paragraphs as though fully stated herein.

386. Nationwide sent Scott Estep a collection letter that falsely represented that Scott Estep was still personally liable for the discharged Second Mortgage debt.

387. Nationwide willfully violated 11 U.S.C. § 524(a)(2) by attempting to collect a discharged debt by sending a collection letter dated March 3, 2016.

388. Nationwide's actions and omissions were willful, rendering it liable for civil contempt sanctions.

**WHEREFORE**, Plaintiff prays that judgment be entered against these Defendants for:

a.) Plaintiff's actual damages;

b.) Punitive and/or statutory damages pursuant to 15 U.S.C. § 1681n;

c.) Reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n and/or 1681o;

d.) Statutory damages against Ocwen and Nationwide pursuant to 15 U.S.C. § 1692k;

e.) Reasonable attorney's fees and costs against Ocwen and Nationwide pursuant to 15 U.S.C. § 1692k;

f.) Civil Contempt damages and penalties against Ocwen and Nationwide in an amount sufficient to affirm the integrity of the Orders of the Bankruptcy Court, the importance of guaranteeing Plaintiff Scott Estep the "Fresh Start" he is entitled to upon discharge, and to deter future similar conduct on the part of Ocwen and Nationwide; and,

87

g.) Such other and further relief as may be just and proper.

Respectfully submitted this 1st day of July, 2016.

*/s/ Paul J. Sieg*
Paul J. Sieg, Bar No.: 334182
Matthew T. Berry, Bar No.: 055663
Berry & Associates
2751 Buford Highway, Suite 600
Atlanta, GA 30324
Ph. (404) 235-3305
Fax (404) 235-3333
psieg@mattberry.com
matt@mattberry.com
*Attorneys for Plaintiff*